FRANCISCO BUIL, Plaintiff and Appellant, *v.* BANCO POPULAR DE PUERTO RICO, Defendant and Appellee.

No. 9672.   Argued May 3, 1948.—Decided July 28, 1948.

238

*Carlos D. Vázquez* for appellant. *Damián Monserrat, Jr., Gabriel de la Haba,* and *Rafael Baragaño, Jr.,* for appellee.

MR. JUSTICE MARRERO delivered the opinion of the Court.

Tomás Cortijo subscribed on August 25, 1924, a promissory note which literally copied reads thus:

"FOR $4,000—SIX MONTHS TERM. INTEREST AT 12 PER CENT PER ANNUM.—Six months after date I promise to pay in this city to Banco Popular de Puerto Rico, of this city, or to its order, the sum of FOUR THOUSAND DOLLARS in cash, which I owe to said bank for a loan of a like sum received by me from said bank on this date to my entire satisfaction. This obligation shall bear interest at twelve per cent per annum. All extensions voluntarily granted (sic) by the holder shall be noted in the within document, which will suffice for the validity thereof. In case of judicial claim all the expenses, costs, and attorney's fees of the creditor or plaintiff shall be for my account and charge. San Juan, P. R., August 25, 1924. Tomás Cortijo."

As security therefor, he and his wife on that same date executed a deed in favor of the aforesaid bank, wherein it was set forth that to secure the payment of such an obligation they mortgaged a property owned by them.

Since the debtor failed to comply with the terms of the obligation, on April 25, 1934, Banco Popular de Puerto Rico instituted in the extinct District Court of San Juan a summary foreclosure proceeding. After setting up certain allegations which are essential in proceedings of this kind,

and after stating that, although the property mortgaged was still recorded in the names of Cortijo and his wife, Andrés Quirós Santiago had acquired it by deed, as the result of a public sale, Banco Popular alleged in its initial petition that, as shown by a certificate issued by the Registrar of Property of San Juan, First Section, on April 22, 1934, the mortgage record in favor of the plaintiff bank which affected the property described was not canceled or pending cancellation according to the daybook; that the property was not subject to prior liens, and that there were the following subsequent encumbrances: (a) a mortgage in favor of Juan B. García Méndez for $2,500, constituted on January 25, 1928; (b) a mortgage in favor of the holder or endorser of a promissory note to order for $3,000, executed on June 29, 1929, according to inscription 19, page 12 of volume 133 of Santurce North; (c) a notice of attachment for $1,500 as principal, legal interest thereon, and costs; and (d) a mortgage for $1,500 and interest thereon at 6 per cent per annum and an additional charge of $200, pursuant to a deed of October 6, 1932; that the mortgage was overdue and enforceable; that the defendants owed petitioner the interest on said loan at the rate of 12 per cent per annum from May 25, 1929, to February 23, 1934, that is, four years eight months, which amounted to $2,280, "but as there are third persons involved, in accordance with the law, in these proceedings only the interest for the two years last past and that for the current year which has accrued is enforceable, and the same will be computed from May 25, 1931, to February 25, 1934, amounting to the sum of $1,320"; that the foreclosing bank has paid to the Treasurer of Puerto Rico taxes on the property amounting to $1,499.42; and that in view of the foregoing the defendants owed to the petitioning bank the following sums: $4,000 as principal; $1,320 as interest due from May 25, 1931, to February 25, 1934; $300 as indemnity for costs, expenses, and fees; and $1,499.42 as taxes paid to the Insular Treasurer. The plaintiff attached to its petition,

among other documents, the said certificate of April 22, 1934, showing that the mortgage was due, that it had not been paid or canceled or was pending cancellation according to the daybook. Finally, it bound itself to pay any damages which might be caused to the defendants or third persons through malice or negligence in not making a true statement of the facts.

On April 25, 1934, the court issued the corresponding writ demanding payment, whereby it was ordered that demand be made upon the defendants Tomás Cortijo and his wife Paula Román for payment, within the term of 30 days, to the plaintiff bank of the sums claimed, warning them that if they failed to make such payment within said term the mortgaged property would be sold at public auction. In said writ it was also ordered that notice of the proceedings be served on Juan B. García Méndez, junior creditor, as well as on the holders of the following promissory notes: one for $3,000 with interest thereon, and $500 as an additional charge; and another one for $500 as principal and interest thereon. In the return of the writ issued the marshal stated that he served the same personally on Cortijo and his wife and on the defendant Quirós Santiago; that he personally notified the junior creditor Juan B. García Méndez. In said return nothing is stated regarding the junior creditors.

After the expiration of the 30 days fixed in the writ demanding payment, on June 6, 1934, the bank filed a motion for an order directing the sale at public auction of the mortgaged property and on the same day the court so ordered.

The record also shows a published notice of sale subscribed on July 18, 1934, by the Marshal of the District Court of San Juan, in which after setting forth that pursuant to the writ issued the mortgaged property would be sold at public auction, and after indicating the place, date, and hour in which the sale would be held, it was stated: "And for the information of the interested parties and of the public in general, and in order that it may serve as

special notification to Don Juan B. García Méndez . . .; to Don Ángel A. Vázquez, who . . . is said to be the owner and holder of a mortgage note for $3,000, interest thereon, and $500 as an additional charge, which encumbers a lot pertaining to the main property, according to inscription 19, page 12 of volume 33 of Santurce North, *and in case he is not such owner, to the person who is the holder of said document*, and" etc.  (Italics ours.)  In the certificate of public sale subscribed by the marshal on August 10, 1934, it is stated that "After the opening of the auction sale was publicly announced in the corridors of the court, the above-described property was offered for sale, and, since Don Ángel A. Vázquez was present, he was notified of that act as the supposed holder of a mortgage note which constitutes a junior lien on the property involved in this auction, and he stated that he was not the holder of that instrument and that he had no interest in the property; and, since no other bidder appeared, I awarded the property to the plaintiff herein, Banco Popular de Puerto Rico, which through its attorney offered for said property the sum of $4,000 to be applied to the payment of the mortgage sought to be foreclosed;  . . ."

Later the bank moved for the cancellation of the existing liens, among which is the mortgage mentioned in inscription 19, page 12 of volume 133 of Santurce, in favor of the holder of the promissory note for $3,000, to which we have already referred.  On the same day the court issued an order granting the motion and the cancellations sought were made in the registry.

At this stage, on March 29, 1944, Francisco Buil brought, in said district court, an action to annul the foreclosure proceeding and for other relief, in which after alleging that he was the holder of the above-mentioned promissory note for $3,000, executed by Cortijo on June 29, 1929, and after stating the reasons why, in his judgment, the foreclosure proceeding instituted by the defendant bank is void, he

prayed for a judgment containing the following pronouncements: (A) Declaring null and void all the steps taken in the above-mentioned mortgage foreclosure proceeding, including the writ demanding payment, the order for sale at public auction, the award of the property, and the order whereby it was provided that the registrar should cancel the subsequent mortgage for $3,000, with interest thereon at 1 per cent per month and $500 as foreclosure credit, which secured the promissory note to bearer owned by the plaintiff; (B) Adjudging the defendant bank to pay to him the sum of $7,350 and interest thereon from the date of the filing of the complaint; and (C) costs and attorney's fees.

The case went to trial and the lower court rendered judgment dismissing the complaint and adjudging the plaintiff to pay costs and $250 as attorney's fees. The plaintiff thereupon appealed, and in support of his appeal he has assigned four errors which will be discussed in the course of this opinion.

In his first and third assignments he urges that the lower court erred in not holding void and nonexistent, for want of jurisdiction, the writ demanding payment issued in the foreclosure proceeding; in having taken judicial notice of certain documents as to which there was no allegation and which were not introduced in evidence; in finding that the plaintiff, as an unknown junior mortgagee, was notified of the mortgage foreclosure proceeding. The appellant is wrong. By express provision of Art. 171 of the Regulations for the Execution of the Mortgage Law, "*When the certificates of the registrar of property show the addresses of the persons interested in the liabilities which may have been recorded subsequently to the right of the petitioner,* the judge shall order, at the time demand for payment is issued, that notice thereof be served on said interested persons at the addresses mentioned if found there." (Italics ours.) As we have already stated, in the writ demanding payment it was ordered that demand be made upon the defendants To-

más Cortijo and his wife, and Andrés Quirós Santiago, and also that notice of the proceedings be served on Juan B. García Méndez, junior creditor, and on the holders of the promissory notes for $3,000 and $500. Article 172 of the Regulations, after mentioning the notices which should be published in these proceedings, provides that:

"These notices shall state the day, hour and place of the sale, and shall also serve to notify the creditors whose interests in the property were recorded or cautionary notices thereof entered subsequently to the claim of the execution creditor, upon whom the notice prescribed by the last paragraph of article 171 may not have been served, to which end it shall be necessary that the names of such interested persons be stated as they appear in the certificate of the registrar, in order that they may attend the sale if they so desire."

Although, as we have already stated, a certificate issued by the registrar of property dated April 22, 1934, accompanied the initial petition, however, in said petition there are mentioned certificates previously issued, and it is set forth "that all the particulars stated in the certificates mentioned above up to the present date are in full force and effect." Those prior certificates have not been sent up to this Court, and they will be discussed further on in this opinion in connection with another point raised. If the proper certificates issued by the registrar show the addresses of the junior creditors, the law requires that they be personally served with process. If the addresses are not shown, it is not necessary, of course, to make such service. However, in the latter case they must be served with notice by publication. What is important is that the junior creditors be informed of the proceedings in some manner ". . . in case they should desire to pay, before the holding of the auction sale, the principal, interest, and costs secured by the mortgage sought to be foreclosed." Barrachina, *Derecho Hipotecario y Notarial*, vol. 3, p. 163. However, since the only certificate presented does not show the addresses

of the interested persons, and since we do not know whether or not in the other certificates mentioned therein the addresses of the junior creditors are set forth, we can not hold that the provisions of the above-mentioned Articles were not complied with. (The published notice (*edicto*) shows that the junior creditors were thereby notified of the proceedings.) The rebuttable presumption is that the law has been complied with. Subdivision 32, § 102 Law of Evidence. It was incumbent on the plaintiff to place this Court in a position to decide the questions raised by him, and since he failed to do so, his contention on this point should be dismissed.[1]

■ At the trial the defendant only introduced in evidence the above-mentioned certificate subscribed by the registrar of property on April 22, 1934. He failed to present the certificates issued by the registrar on August 16 and December 13, 1933, and March 9, 1934, relating to the foreclosed mortgage for $4,000. In the certificate of April 22 the registrar expressly stated: "according to the registry and in view of the three certificates issued . . ." on the aforesaid dates, and "that all the particulars set forth in the certificates above mentioned up to this date are in full force and effect." As we have seen, the appellant now contends that the district court erred in taking judicial notice of the three certificates notwithstanding the fact that there was no allegation regarding them and that they were not introduced in evidence. The plaintiff is not correct, either, on this point. Those three certificates were attached to the initial petition as integral parts thereof and of the certificate of April 22, 1934. The plaintiff knew this and yet he only presented the latter certificate.

When a part of a record which is before the same court that hears the cause is offered in evidence—in this case numerous documents which appeared in the record of the foreclosure proceeding brought by the bank against Cortijo

---

[1] Cf. *Ferrer* v. *Registrar*, 44 P.R.R. 268; *Nazario* v. *Registrar*, 36 P.R.R. 694; *Henna et al.* v. *Sauri & Subirá*, 22 P.R.R. 776; and *Fernández & Co.* v. *Ramírez*, 8 P.R.R. 94.

and others were introduced—the court may take judicial notice of other parts of the record, especially where, as in the present case, one of the documents introduced makes reference to others which appear in the same record, and recites that those other documents are supplemental to the document thus introduced. In *Sewell* v. *Johnson*, 165 Cal., 762, 770, it is stated that ". . . certainly no valid reason can be given why a court may not take notice in a pending appeal of its action in another case intimately connected with it and occurring subsequent to the taking of such appeal when it is evident that unless such notice is taken and acted on injustice to the appellant will result." See also *Gay* v. *Gay*, 146 Cal. 237, 241.

In volume IX of Wigmore on Evidence, 3d ed., § 2579, it is said: "The proceedings in a Court are constituted by the record, and this record originally took its name from the judicial memory (*'recordari'*) which could be invoked for recalling those prior proceedings. Nevertheless, it seems today unreasonable, having regard to the general principle of judicial notice (*ante*, § 2565), to predicate an actual judicial knowledge of the proceedings in specific prior litigations. . . However, for reasons of convenience,-. . . . Courts are often found taking notice of the tenor or effect of some part of a judicial proceeding, without requiring formal evidence. . . . It is often done for a part of the record in the *same proceeding*, or in a *prior stage of the same controversy;* less often for the record of a *distinct litigation*, especially when in another Court." See also volume VII, Wigmore on Evidence, § 2104, p. 502, where it is stated that "Where a writing offered *refers to another writing*, the latter should also be put in at the same time, provided the reference is such as to make it probable that the latter is requisite to a full understanding of the effect of the former. The same principle would apply to another writing, not expressly referred to, but *necessary* by the nature of the documents to a proper understanding of the one offered."

Hence, there was no error in taking judicial notice of the three certificates mentioned in the certificate issued by the registrar on April 22, 1934.

In his second assignment the appellant complains that unagreed default interest was granted to the defendant bank. When in a summary foreclosure proceeding collection is made of amounts in excess of those owed, the proceeding is absolutely void. *Torres* v. *Fernández*, 65 P.R.R. 584; *Vázquez* v. *Gutiérrez*, 52 P.R.R. 162; *Martorell* v. *Crédito y Ahorro Ponceño*, 42 P.R.R. 632. Undoubtedly this is so mainly because, strictly speaking, the proceeding is one *ex parte* and the writ demanding payment, which is issued as a consequence of the initial petition and the documents attached thereto, has the scope of a judgment. *Heirs of Mandés* v. *Heirs of Agüero*, 42 P.R.R. 660.

According to § 114 of the Mortgage Law, "A mortgage constituted to secure a credit which earns interest, shall secure with regard to third persons, in addition to the principal, only the interest for the two years last past and that part of the current year which may have accrued." [2]

As we have already seen, the initial petition clearly states that "as third persons are involved, in accordance with the law, in these proceedings only the interest for the two years last past and that for the current year which has accrued is enforceable, and the same will be computed from May 25, 1931, to February 25, 1934, amounting to the sum of $1,320." In this connection the defendant herein made in its initial petition a true statement of the law, but it com-

---

[2] See also §§ 145 and 147 of the Mortgage Law, which provide:

"Article 145.—The interest on the loan shall not be held to be secured by the mortgage in the form prescribed by article 114, unless the record itself shall show the agreement and amount of such interest."

"Article 147.—A mortgage creditor may proceed against the property mortgaged to recover interest due, no matter at what time the principal is payable; but if there should be a third person interested in said property whom the proceedings might prejudice, the sum demanded can not exceed a sum representing the unpaid interest due for the two years last past and the part due for the current year."

puted the interest for the entire period at the rate of 12 per annum. Therefore, it is necessary to determine whether the defendant bank was entitled to compute and collect the interest at that rate or whether it should have computed it at 6 per cent.

In the promissory note executed by Cortijo in favor of the bank, which was copied at the beginning of this opinion, it is clearly stated that "this obligation shall bear interest at twelve per cent per annum" and that "all extensions voluntarily granted (*sic*) by the holder shall be noted in the within document, which will suffice for the validity thereof." It appears from the evidence introduced, especially from the certificate issued by the Registrar of Property of San Juan on December 27, 1944, that no extension was granted for the payment of the obligation. The Usury Act, No. 5 of August 17, 1933 (Spec. Sess. Law, p. 26), therefore is not at all involved in this case.[3] Nevertheless, the document mentioned above shows with all clearness that, although interest at 12 per cent until maturity was stipulated, nothing was said regarding interest after default, and it is a well-established doctrine that when in a document of this kind default interest is not stipulated, only interest at the legal rate of 6 per cent may be collected. *Vega* v. *García, infra; Figueroa* v. *Boneta*, 58 P.R.R. 811. Since interest was collected on said $4,000 from May 25, 1931, to February 25, 1934 at the rate of 12 per cent, it unquestionably appears that in the mortgage foreclosure proceeding instituted by Banco Popular de Puerto Rico against Tomás Cortijo, Paula Román, and Andrés Quirós Santiago excessive interest was collected and, consequently, the proceeding is entirely void. Said proceeding being void, the plaintiff herein, who as has been said, was the holder of a promissory note payable to bearer, secured by a mortgage duly recorded, was prejudiced by the cancellation of his junior lien.

---

[3] Cf. *Vega* v. *García*, 61 P.R.R. 777 and *Toscano* v. *Pomales*, 60 P.R.R. 328.

248

■ Now, regarding the claim for damages set up by the plaintiff, the defendant contends that the same has prescribed. Its contention is not correct. This Court has previously held in numerous cases that an action for damages arising from the annulment of a summary foreclosure proceeding is one *ex contractu,* which prescribes after fifteen years. *Rodríguez Hnos. & Co.* v. *Aboy,* 66 P.R.R. 498, 508. In the cited case, quoting Manresa (1907 ed.) vol. 12, pp. 600–601, it was said:

". . . the only kind of fault and omission or negligence which may be and is the subject matter of the present chapter, is the second one, namely, that which without the existence of a prior obligation *and without any contractual antecedent,* produces an injury or prejudice that originates in an act or omission which involves a civil responsibility only; that is, which although wrongful, does not have the character of a public offense or transgression it not being punishable by law." (Italics ours.)

This is a case in which, although the plaintiff did not contract directly with the defendant bank, the action arises from a contractual antecedent, which is the contract of loan and mortgage that existed between the bank and Cortijo.

■ As shown by the pleadings and the evidence, what the plaintiff herein seeks, is that, upon the summary foreclosure proceeding being declared void, damages be awarded to him. Cf. *Arvelo et al.* v. *Banco Ter. y Agr.,* 25 P.R.R. 677. There is no doubt that, in his capacity as junior creditor with a recorded title, the plaintiff is entitled to bring such an action. In this connection, Art. 169 of the Regulations for the Execution of the Mortgage Law provides that "The petition referred to in this article which shall always be authorized by the signature of an attorney at law, shall enumerate the facts . . .; it shall specifically state the exact amounts collected by way of interest . . ., stating also the net amount of the claim which, by the mere act of instituting the proceedings the creditor will contract, *assuming liability, for any loss or damage the debtor or*

*interested third persons may suffer through malice or negligence in not making a true statement of facts and of the circumstances which the judge must take into consideration in authorizing the institution of the proceedings and continuing them."* (Italics ours.) On the other hand, Art. 175 of the same Regulations provides that "The summary proceedings . . ., can not be suspended by incidental issues or any other issues raised by the debtor or the third person in possession, nor by any other person appearing as an interested party, excepting in the" cases which are enumerated, and it further provides that "All other claims that may be brought, either by the debtor or by third persons in possession and other persons interested, including those involving the nullity of the title or of the proceedings, or the maturity truth, extinction or amount of the debt, shall be heard in the proper plenary action, without ever producing the effect of suspending or interfering with the execution proceedings. . . ." Certainly a junior creditor holding a recorded right is a third person, or at least a person interested in the legality or purity of the proceedings. On this particular point Morell, in his *Comentarios a la Legislación Hipotecaria* (1917 ed.), vol. 3, pp. 717, 718, and 720, states the following:

"Combining § 114 with §§ 145 and 147, it appears that if the mortgage record does not show any stipulation of interest or the amount of such interest, the mortgaged property does not answer, as against third persons, for any interest *or it answers only for interest at the legal rate.* If such stipulation and the rate of interest (6, 8, or 12 per cent) is shown, Article 114 is applicable. And if the properties were expressly and specially mortgaged for a fixed amount to cover payment of interest, said special mortgage will fully prejudice third persons.

"*Under § 114, a third person is any one who has not intervened as a party to the recorded mortgage, whether he acquires the ownership of the property or any other real right; but always provided that he records the right acquired by him.*"

". . . . . . . . . .

". . . *Third persons may be divided into two groups: one consisting of those who purchase the property; and the other consisting of those who acquire some real right therein other than the ownership or possession, for example, a mortgage.*

". . . . . . . .

"For instance, *a personal creditor* who records an attachment *is not* either, as regards the other phase of the question, the third person mentioned in § 114 and referred to in § 25 of the same law; but, on the other hand, *the mortgage creditor, whose title once recorded produces all legal effects even as against creditors peculiarly privileged under general legislation, is such a person.*" (Italics ours.)

See also *Henna et al.* v. *Saurí y Subirá, supra;* Morell, *op. cit.,* vol. 4, p. 119; and Galindo and Escosura, vol. 3, p. 236.

The second error was clearly committed and, since the fourth assignment is a sequel of the preceding ones, it is not necessary to discuss the same.

The judgment appealed from should be reversed and the case remanded to the lower court for the purpose of determining the amount of the damages to which the plaintiff is entitled.

Mr. Justice De Jesús did not participate herein.